UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
=========================================

MT. HAWLEY INSURANCE COMPANY,

                              Plaintiff,                    Civ. Action No.: _____

v.

VERISTIC TECHNOLOGIES, INC.,                    **COMPLAINT FOR**
                                                **DECLARATORY**
                                                **JUDGMENT**
                              Defendant.

=========================================

        Plaintiff Mt. Hawley Insurance Company ("Mt. Hawley"), by and through its attorneys,

Delahunt Law PLLC, for its complaint for declaratory judgment alleges:

        1.      This is an action for declaratory judgment pursuant to Federal Rule of Civil

Procedure 57 and 28 U.S.C. section 2201.  Mt. Hawley seeks judgment declaring that it has no

duty to defend or indemnify defendant Veristic Technologies, Inc. ("Veristic") in connection with

the underlying action and underlying accident referred to below.

        2.      Mt. Hawley is an Illinois corporation with its principal place of business in Illinois.

        3.      Veristic is a Texas company with its principal place of business in Texas.

        4.      The Court has subject matter jurisdiction pursuant to 28 U.S.C. section 1332(a)(1)

based upon complete diversity of citizenship of the parties and an amount in controversy that

exceeds $75,000.

        5.      Veristic is subject to personal jurisdiction pursuant to New York General

Obligations Law sections 5-1401 and 5-1402.

        6.      Venue is proper in this Court pursuant to 28 U.S.C. section 1391(b)(3).

        7.      Prior to November 14, 2017, Veristic performed design, inspection, and/or

fabrication of drilling rig structures and/or equipment for a drilling rig known as "Cactus Drilling Rig 163."

8.      Veristic performed the services alleged in paragraph 7 above pursuant to a Nonexclusive Technology License Agreement with Cactus Drilling Company, LLC ("Cactus Drilling").

9.      Veristic's Nonexclusive Technology License Agreement with Cactus Drilling is attached hereto as **Exhibit 1**.

10.     On November 11, 2019, "Plaintiff's First Amended Petition" was filed in the action captioned <u>Miguel Saucedo v. National Oilwell Varco, L.P., *et al.*</u> in the District Court of Harris County, Texas (Cause No. 2019-58958).

11.     The "Plaintiff's First Amended Petition" in <u>Saucedo</u> is attached hereto as **Exhibit 2**.

12.     The amended petition made Veristic a defendant in the <u>Saucedo</u> action.

13.     The amended petition in <u>Saucedo</u> states:  "This lawsuit is necessary as a result of personal injuries that Plaintiff sustained on or about November 14, 2017.  On or about this date, Plaintiff was working as a floor hand for a domestic land drilling contractor in Texas on Cactus Drilling Rig 163.  While lowering the mast, a winch cable became dislodged from a sheave causing Plaintiff to suffer serious injuries including the traumatic amputation of his leg and the traumatic amputation of four of his fingers.  Component parts of Cactus Drilling Rig 163 that were manufactured, designed, tested, distributed, and/or sold by Defendants failed."

14.     As against the defendants in <u>Saucedo</u>, including Veristic, the amended petition alleges:  failure to comply with applicable safety regulations, standards, customs, and practices; failure to properly supervise its employees; failure to properly train its employees; failure to

provide adequate safety equipment; failure to provide and/or utilize appropriate equipment for the work in question; failure to draft, design, implement and/or execute a reasonably safe plan and/or procedure by which to perform the work in question; defectively and negligently manufacturing, designing, testing, distributing, installing, and/or warning about their components; failure to provide a safe work place; failure to provide adequate medical treatment; vicarious liability for its agents and employees' negligence; failure to provide the proper equipment for safe operations; failure to maintain a workplace free from unnecessary hazards; and other acts deemed negligent and gross[ly] negligent.

15.     The amended petition in Saucedo asserts causes of action for negligence, negligence *per se*, and/or gross negligence against the defendants named therein, including Veristic.

16.     The amended petition in Saucedo also asserts a claim for punitive damages against the defendants therein, including Veristic.

17.     The amended petition in Saucedo states that the claims asserted do not arise out of the provision of professional services by a licensed or registered professional.

18.     Mt. Hawley issued an insurance policy to Veristic (No. NRG0000546) for the period June 22, 2019 to June 22, 2020 ("the Mt. Hawley primary policy").

19.     A certified copy of the Mt. Hawley primary policy is attached hereto as **Exhibit 3**.

20.     Veristic placed Colony Specialty Insurance Company/The Argo Group ("Argo"), its liability insurer for the period inclusive of the date of the underlying accident, on notice of the Saucedo action.

21.     Argo is defending Veristic in Saucedo.

22.     Notwithstanding that it previously placed Argo on notice of Saucedo, and

notwithstanding that Argo is defending Veristic in <u>Saucedo</u>, Veristic subsequently placed Mt. Hawley on notice of <u>Saucedo</u>.

23.     The Mt. Hawley primary policy contains a Service of Suit and Conditions Endorsement (RIL 099 (03/19)) that states, in part:

**Conditions**

    **1.**     This Policy is amended to add the following Conditions:

        **AA.**     **Jurisdiction and Venue.** It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the insured shall submit to the jurisdiction of the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any insured against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

        **BB.**     **Choice of Law.** All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

24.     The Mt. Hawley primary policy includes Commercial General Liability Coverage, which coverage is inapplicable to the <u>Saucedo</u> action because the November 14, 2017 underlying accident occurred prior to the policy's June 22, 2019 inception.

25.     The Mt. Hawley primary policy includes Employee Benefits Liability Coverage that is inapplicable to the <u>Saucedo</u> action.

26.     The Mt. Hawley primary policy includes Contractors Pollution Liability Coverage that is inapplicable to the <u>Saucedo</u> action.

27.     The Mt. Hawley primary policy includes Professional Liability Coverage subject to a $1 million each-claim limit of liability.

28.     Veristic's agent advised that Veristic was requesting Mt. Hawley review the notice of the <u>Saucedo</u> action pursuant to the Mt. Hawley primary policy's Professional Liability Coverage.

29.     The Mt. Hawley primary policy (NPC 101 (03/19)) states, in part:

**SECTION I – PROFESSIONAL LIABILITY COVERAGE**

**1.     INSURING AGREEMENT**

    **a.**     We will pay those sums that the insured becomes legally obligated to pay as "damages" that result from an actual or alleged act, error or omission in the performance of "professional services" by the insured, including any "claim" for a "pollution incident", to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those "damages". However, we will have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may, at our discretion, investigate any actual or alleged act, error or omission and settle any "claim" that may result. But:

        **(1)**     The amount we will pay for "damages", "defense expense", or supplementary payments is limited as described in SECTION IV – LIMITS OF INSURANCE; and

        **(2)**     Our right and duty to defend ends when we have used up the applicable Limit of Insurance in the payment of judgments, settlements, defense expense or supplementary payments.

    **b.**     This insurance shall only apply if:

        **(1)**     The "claim" is first made against the insured during the "policy period" and first reported

to the insurer, in writing, during the "policy period", or Extended Reporting Period, if applicable;

**(2)** The actual or alleged act, error or omission takes place in the "coverage territory"; and

**(3)** The actual or alleged act, error or omission takes place on or after the "retroactive date", shown in the Declarations and before the end of the "policy period".

30. The Mt. Hawley primary policy (NPC 101 (03/19)) defines "claim" as: "a demand received by the insured for money or services that arises from an act, error or omission to which this insurance applies. 'Claim' includes but is not limited to 'suits', petitions, arbitrations or other alternative dispute resolution requests filed against the insured."

31. The Mt. Hawley primary policy (NPC 101 (03/19)) defines "damages" as:

a monetary judgment, award or settlement of compensatory damages including "damages" because of an actual or alleged act, error or omission in the performance of "professional services". "Damages" do not include fines, taxes, penalties, or punitive, exemplary, or multiplied damages, injunctive or equitable relief, or the return of fees or charges for services rendered or expenses incurred by the insured for redesign, changes, additions or remedies necessitated by a "claim". The time and expense incurred by the insured in assisting in resolving a "claim" are not "damages".

32. The amended petition in Saucedo seeks relief that does not constitute "damages" as defined in the Mt. Hawley primary policy.

33. The Mt. Hawley primary policy (NPC 101 (03/19)) defines "professional services" as: "those services the Insured is legally qualified to perform for others for a fee in the practice of architecture, engineering or surveying. 'Professional services' may also include those 'professional services' as limited or amended by an attached schedule."

34.     The Mt. Hawley primary policy contains the Limitation of Coverage to Designated Professional Services endorsement (NPC 307 (04/16)), which states:  "This insurance only applies to 'claims' or 'suits' that arise out of your 'professional services' described in the above schedule and performed by you or on your behalf."

35.     The schedule in the Limitation of Coverage to Designated Professional Services endorsement (NPC 307 (04/16)) states:   "Design, inspection and fabrication of drilling rig structures and equipment."

36.     The amended petition in <u>Saucedo</u> seeks relief for alleged acts and omissions that do not constitute "professional services" as defined in the Mt. Hawley primary policy.

37.     The Mt. Hawley primary policy's Professional Liability Coverage is subject to exclusions, including:

> **u.     Known Circumstances**
>
> "Damages" based upon or arising out of any "claim" which arose from facts or circumstances which were known by the insured prior to the inception of this Policy or the first "policy period" in effect when consecutive policies have been renewed by us.

38.     Veristic was aware of the underlying November 4, 2017 accident prior to inception of the Mt. Hawley primary policy on June 22, 2019.

39.     Prior to the inception of Mt. Hawley primary policy on June 22, 2019, Veristic was aware that underlying plaintiff Miguel Saucedo ("Saucedo") suffered serious bodily injury as a result of the November 4, 2017 underlying accident.

40.     Prior to the inception of Mt. Hawley primary policy on June 22, 2019, Veristic was aware that Saucedo suffered a severed limb and/or foot and severed fingers as a result of the underlying accident.

41.     Prior to the inception of Mt. Hawley primary policy on June 22, 2019, Veristic was aware that it designed the Cactus Drilling Rig 163 and that Saucedo was injured by the rig while attempting to put a cable back into its sheave after it slipped out.

42.     Following the underlying accident, and prior to inception of the Mt. Hawley primary policy, Cactus Drilling requested that Veristic design modifications to winch bases for the "Cactus Drilling Rig 163" referred to in the amended petition in <u>Saucedo</u>.

43.     On March 31, 2020, a representative of Mt. Hawley sent an e-mail to Bojan Babic of Veristic, stating:  "It appears that, shortly after Mr. Saucedo's accident, Veristic was asked to assist with re-designing the Rocket Rig to avoid similar accidents from happening in the future." That day, Mr. Babic responded, stating:  "That is correct Jacob Danforth, from Cactus, did reach out to me after the incident to work up some modifications to the winch bases."

44.     On March 31, 2020, Veristic sent Mt. Hawley an e-mail stating:  "That is correct Jacob Danforth, from Cactus, did reach out to me after the incident to work up some modifications to the winch bases."

45.     The March 31, 2020 e-mail from Veristic to Mt. Hawley is attached hereto as **Exhibit 4**.

46.     On and before December 4, 2017, Veristic provided Cactus with redesign proposals.

47.     The redesign proposals were directed to preventing the rig's cables (sometimes referred to as "lines") from slipping out of their sheaves.

48.     On December 4, 2017, Veristic and Cactus exchanged e-mail messages regarding Veristic's redesign proposals.

49.    A December 4, 2017 e-mail sent from Veristic to Cactus states:  "So Charlie had an idea he wanted to run by you guys about a way to keep the line in the sheaves now that we're talking about re-building the substructure cluster.  I'm really a fan of this idea and it basically involves putting in ribs centered on each of the cluster's sheaves that will act like a continuous line guard and won't allow the lines to slip out of the sheaves."

50.    The December 4, 2017 e-mail exchange between Veristic and Cactus is attached hereto as **Exhibit 5**.

51.    Prior to December 4, 2017, Veristic and Cactus exchanged additional e-mail messages regarding the proposed redesigns.

52.    A November 28, 2017 e-mail exchange between Veristic and Cactus is attached hereto as **Exhibit 6**.

53.    A November 29, 2017 e-mail exchange between Veristic and Cactus is attached hereto as **Exhibit 7**.

54.    The claims asserted by Saucedo in the underlying action arise from the November 14, 2017 underlying accident.

55.    Veristic knew of the November 14, 2017 underlying accident prior to the inception of the Mt. Hawley policy on June 22, 2019.

56.    To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley's primary policy's Professional Liability Coverage, coverage is excluded pursuant to the policy's Known Circumstances exclusion.

57.    Mt. Hawley has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the <u>Saucedo</u> action or the underlying accident alleged therein.

58.     The Mt. Hawley primary policy's Professional Liability Coverage is subject to

exclusions, including:

    **l.**     **Fines, Penalties And Assessments**

> Any fines, penalties or assessments or any punitive,
> exemplary or multiplied "damages" arising out of or related
> to any act, error, or omission in the performance of
> "professional services" by the insured. We shall have no
> duty to defend any criminal proceedings.

59.     The amended petition in <u>Saucedo</u> seeks punitive damages against the underlying

defendants, including Veristic.

60.     Punitive damages are excluded from the Mt. Hawley primary policy's Professional

Liability Coverage pursuant to the policy's Fines, Penalties And Assessments exclusion.

61.     There is no coverage for punitive damages under the Mt. Hawley primary policy

because liability insurance coverage for punitive damages is barred by New York public policy.

62.     Mt. Hawley has no duty to defend or indemnify Veristic under the Mt. Hawley

primary policy in connection with any claims for punitive damages asserted in <u>Saucedo</u>.

63.     The Mt. Hawley primary policy's Professional Liability Coverage is subject to

exclusions, including:

    **t.**     **Prior Claims**

> "Damages" based upon or arising out of any "claim"
> reported under any insurance policy that was both in effect
> before the beginning of the "policy period" shown in the
> Declarations and issued by an entity other than the
> Company.

64.     Upon information and belief, prior to reporting the <u>Saucedo</u> amended petition to

Mt. Hawley, Veristic reported the underlying accident and/or the <u>Saucedo</u> action to an insurer

other than Mt. Hawley under a policy in effect before the beginning of the Mt. Hawley primary policy period.

65.     To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley's primary policy's Professional Liability Coverage, coverage is excluded pursuant to the policy's Prior Claims exclusion.

66.     Mt. Hawley has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the <u>Saucedo</u> action or the underlying accident alleged therein.

67.     The Mt. Hawley primary policy's Professional Liability Coverage is subject to exclusions, including:

> **v.      Products Liability**
>
> Any "claim" based upon or arising out of goods or products manufactured, sold, handled, distributed, altered or repaired by the insured or by others trading under the insured's name, including any container thereof, any failure to warn, or any reliance upon a representation or warranty made at any time with respect thereto.

68.     The amended petition in <u>Saucedo</u> seeks relief for alleged acts and omissions within the scope of the Products Liability exclusion.

69.     To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley's primary policy's Professional Liability Coverage, coverage is excluded pursuant to the policy's Products Liability exclusion.

70.     Mt. Hawley has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the <u>Saucedo</u> action or the underlying accident alleged therein.

71.     Mt. Hawley issued Veristic an Excess Liability Policy (No. NRX000568) for the period June 22, 2019 to June 22, 2020 ("the Mt. Hawley excess policy").

72.     A certified copy of the Mt. Hawley excess policy is attached hereto as **Exhibit 8**.

73. The Mt. Hawley excess policy contains a Service of Suit and Conditions Endorsement (RIL 099XL (03/19)), which states, in part:

### Conditions

1. This Policy is amended to add the following Conditions:

   AA. **Jurisdiction and Venue.** It is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the insured shall submit to the jurisdiction of the State of New York, and shall comply with all the requirements necessary to give such court jurisdiction. Any litigation commenced by any insured against the Company shall be initiated in New York. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's right to remove an action to a United States District Court.

   BB. **Choice of Law.** All matters arising hereunder including questions related to the validity, interpretation, performance and enforcement of this Policy shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).

74. The Mt. Hawley excess policy's Schedule of Underlying Insurance (CEE 319 (03/06)) lists the Professional Liability Coverage under the Mt. Hawley primary policy.

75. The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part:

   I. **INSURING AGREEMENT**

   A. **Coverage**

   Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**. However, the insurance afforded by this policy shall apply: (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence

> which takes place during the policy period and
> anywhere in the world; provided however, if suit is
> brought, such suit is brought in the United States, its
> territories or possessions, or Canada.   If the
> **underlying insurance** does not pay a loss, for
> reasons other than exhaustion of an aggregate limit
> of liability, then we shall not pay such loss.
>
> This policy, except where provisions to the contrary
> appear herein, is subject to all of the conditions,
> agreements, exclusions, definitions and limitations
> of and shall follow the **underlying insurance** in all
> respects.  This includes changes by endorsement.

76.     The Mt. Hawley excess policy (MXL 131 (05/15)) defines "ultimate net loss" as

follows:

> **Ultimate net loss** means all sums actually paid, or which the insured
> is legally obligated to pay, as damages in settlement or satisfaction
> of claims or suits for which insurance is afforded under this policy,
> reduced by all recoveries or salvage.
>
> **Ultimate net loss** shall include defense expense payments made by
> the insurer of the **underlying insurance**, provided that such
> expenses are included within the limit of insurance of the
> **underlying insurance** by the terms of that policy.

77.     The Mt. Hawley excess policy (MXL 131 (05/15)) defines "underlying insurance"

as "the policy or policies of insurance in the Schedule of Underlying Insurance."

78.     The Mt. Hawley excess policy contains an Amendment for Underlying Claims-

Made Coverage endorsement (CEE 519 (05/19)), which states, in part:

> A.     If the **underlying insurance** affords coverage on a claims-
>        made or claims-made and reported basis, then this insurance
>        will apply on a claims-made and reported basis.   This
>        insurance shall follow the claims-made provisions of the
>        **underlying insurance**, subject to the following conditions
>        precedent to coverage:
>
>        1.     This insurance applies only if a claim is first made
>               and reported in writing to the Company during the
>               policy period; and,

2.      This insurance does not apply to any occurrence or
event which commences prior to the retroactive date
or after the end of the policy period.  If there is no
retroactive date in the underlying insurance, then the
retroactive date is the policy inception date.

These conditions apply regardless of whether or not there are
terms, conditions, agreements, exclusions, definitions or
limitations to the contrary in the **underlying insurance**.

79.     Because there is no coverage under the Mt. Hawley primary policy for the reasons
alleged herein, there is also no coverage under the Mt. Hawley excess policy because there is no
ultimate net loss resulting from an occurrence insured by the underlying insurance.

80.     Because there is no coverage under the Mt. Hawley primary policy for the reasons
alleged herein, there is also no coverage under the Mt. Hawley excess policy because the
underlying insurance has not been exhausted by payment of the limits of liability of such insurance.

81.     Because there is no coverage under the Mt. Hawley primary policy for the reasons
alleged herein, there is also no coverage under the Mt. Hawley excess policy, which does not apply
if the underlying insurance does not pay a loss for reasons other than exhaustion of an aggregate
limit of liability.

82.     Because there is no coverage under the Mt. Hawley primary policy for the reasons
alleged herein, there is also no coverage under the Mt. Hawley excess policy, which is subject to
the Known Circumstances exclusion set forth in the Mt. Hawley primary policy.

83.     Because there is no coverage under the Mt. Hawley primary policy for the reasons
alleged herein, there is also no coverage under the Mt. Hawley excess policy, which is subject to
the Prior Claims exclusion set forth in the Mt. Hawley primary policy.

84.    Because there is no coverage under the Mt. Hawley primary policy for the reasons alleged herein, there is also no coverage under the Mt. Hawley excess policy, which is subject to the Products Liability exclusion set forth in the Mt. Hawley primary policy.

85.    Mt. Hawley has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the <u>Saucedo</u> action or the underlying accident alleged therein.

86.    Because there is no coverage for punitive damages under the Mt. Hawley primary policy for the reasons alleged herein, there is also no coverage for punitive damages under the Mt. Hawley excess policy, which is subject to the Fines, Penalties And Assessments exclusion set forth in the Mt. Hawley primary policy.

87.    There is no coverage for punitive damages under the Mt. Hawley excess policy because liability insurance coverage for punitive damages is barred by New York public policy.

88.    Mt. Hawley has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with any claims for punitive damages asserted in <u>Saucedo</u>.

89.    The Mt. Hawley excess policy contains a Continuous or Progressive Injury and Damage Exclusion (CEE 396 (01/19)), which states:

> 1.    This insurance does not apply to any damages because of or related to **bodily injury**, **property damage**, or **personal and advertising injury**:
>
> a.    Which first existed, or alleged to have first existed, prior to the inception date of this policy; or
>
> b.    Which are, or are alleged to be, in the process of taking place prior to the inception date of this policy, even if the actual or alleged **bodily injury**, **property damage**, or **personal and advertising injury** continues during this policy period.
>
> 2.    This insurance does not apply to any damages because of or related to **property damage**, or **personal and advertising injury** which were caused, or are alleged to have been

caused by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this policy.

We shall have no duty to defend any insured against any loss, claim, **suit**, or other proceeding alleging damages arising out of or related to **bodily injury**, **property damage**, or **personal and advertising injury** to which this endorsement applies.

90.     The amended petition in Saucedo alleges bodily injury that existed prior to the inception date of the Mt. Hawley excess policy.

91.     To the extent the amended petition in Saucedo seeks damages resulting from professional services within the scope of the Mt. Hawley excess policy, coverage is excluded pursuant to the policy's Continuous or Progressive Injury and Damage Exclusion.

92.     Mt. Hawley has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the Saucedo action or the underlying accident alleged therein.

93.     Mt. Hawley commenced this action for judgment declaring that it has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the underlying Saucedo action or the underlying accident alleged therein.

94.     Mt. Hawley commenced this action for judgment declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying Saucedo action or the underlying accident alleged therein.

**FIRST CAUSE OF ACTION**

95.     Mt. Hawley refers to and incorporates paragraphs 1 through 94 above as if fully set forth.

96.     The Insuring Agreement of the Mt. Hawley primary policy states, in part: "We will pay those sums that the insured becomes legally obligated to pay as 'damages' that result from an

actual or alleged act, error or omission in the performance of 'professional services' by the insured[.]"

97.    The Mt. Hawley primary policy defines "damages" as:

> a monetary judgment, award or settlement of compensatory damages including "damages" because of an actual or alleged act, error or omission in the performance of "professional services". "Damages" do not include fines, taxes, penalties, or punitive, exemplary, or multiplied damages, injunctive or equitable relief, or the return of fees or charges for services rendered or expenses incurred by the insured for redesign, changes, additions or remedies necessitated by a "claim". The time and expense incurred by the insured in assisting in resolving a "claim" are not "damages".

98.    The amended petition in <u>Saucedo</u> seeks relief that does not constitute "damages" as defined in the Mt. Hawley primary policy.

99.    Mt. Hawley is entitled to judgment declaring that it has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein for any relief outside the scope of the policy's definition of "damages."

**SECOND CAUSE OF ACTION**

100.    Mt. Hawley refers to and incorporates paragraphs 1 through 99 above as if fully set forth.

101.    The Insuring Agreement of the Mt. Hawley primary policy states, in part: "We will pay those sums that the insured becomes legally obligated to pay as 'damages' that result from an actual or alleged act, error or omission in the performance of 'professional services' by the insured[.]"

102.    The Mt. Hawley primary policy (NPC 101 (03/19)) defines "professional services" as: "those services the Insured is legally qualified to perform for others for a fee in the practice of

architecture, engineering or surveying. 'Professional services' may also include those 'professional services' as limited or amended by an attached schedule."

103.    The Mt. Hawley primary policy contains the Limitation of Coverage to Designated Professional Services endorsement, which states: "This insurance only applies to 'claims' or 'suits' that arise out of your 'professional services' described in the above schedule and performed by you or on your behalf."

104.    The schedule in the Limitation of Coverage to Designated Professional Services endorsement states: "Design, inspection and fabrication of drilling rig structures and equipment."

105.    The amended petition in <u>Saucedo</u> seeks relief for alleged acts and omissions that do not constitute "professional services" as defined in the Mt. Hawley primary policy.

106.    Mt. Hawley is entitled to judgment declaring that it has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein for any actual or alleged act, error, or omission that was not in the performance of "professional services" as defined in the Mt. Hawley primary policy.

**THIRD CAUSE OF ACTION**

107.    Mt. Hawley refers to and incorporates paragraphs 1 through 106 above as if fully set forth.

108.    The claims asserted by Saucedo in the underlying action arise from the November 14, 2017 underlying accident.

109.    Veristic knew of the November 14, 2017 underlying action prior to the inception of the Mt. Hawley primary policy on June 22, 2019.

110.    To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley primary policy's Professional Liability Coverage, coverage is excluded pursuant to the policy's Known Circumstances exclusion.

111.    Mt. Hawley is entitled to judgment declaring that, pursuant to the Mt. Hawley primary policy's Known Circumstances exclusion, it has no duty to defend or indemnify Veristic in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein.

**FOURTH CAUSE OF ACTION**

112.    Mt. Hawley refers to and incorporates paragraphs 1 through 111 above as if fully set forth.

113.    The amended petition in <u>Saucedo</u> seeks punitive damages against the underlying defendants, including Veristic.

114.    Mt. Hawley has no duty to defend or indemnify Veristic in connection with any claims for punitive damages asserted in <u>Saucedo</u> because punitive damages are outside the scope of the policy's definition of "damages."

115.    Mt. Hawley has no duty to defend or indemnify Veristic in connection with any claims for punitive damages asserted in <u>Saucedo</u> pursuant to the Mt. Hawley primary policy's Fines, Penalties And Assessments exclusion.

116.    Mt. Hawley has no duty to defend or indemnify Veristic in connection with any claims for punitive damages asserted in <u>Saucedo</u> because liability coverage for punitive damages is barred by New York public policy.

117.    Mt. Hawley is entitled to judgment declaring that it has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with any claims for punitive damages asserted in <u>Saucedo</u>.

**FIFTH CAUSE OF ACTION**

118.    Mt. Hawley refers to and incorporates paragraphs 1 through 117 above as if fully set forth.

119.    Upon information and belief, prior to reporting the <u>Saucedo</u> amended petition to Mt. Hawley, Veristic reported the underlying accident and/or the <u>Saucedo</u> action to an insurer other than Mt. Hawley under a policy in effect before the beginning of the Mt. Hawley primary policy period.

120.    To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley's primary policy's Professional Liability Coverage, coverage is excluded pursuant to the policy's Prior Claims exclusion.

121.    Mt. Hawley is entitled to judgment declaring that, pursuant to the Mt. Hawley primary policy's Prior Claims exclusion, it has no duty to defend or indemnify Veristic in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein.

**SIXTH CAUSE OF ACTION**

122.    Mt. Hawley refers to and incorporates paragraphs 1 through 121 above as if fully set forth.

123.    The amended petition in <u>Saucedo</u> seeks relief for alleged acts and omissions within the scope of the Products Liability exclusion.

124.    To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley's primary policy's Professional Liability Coverage, coverage is excluded pursuant to the policy's Products Liability exclusion.

125.    Mt. Hawley is entitled to judgment declaring that, pursuant to the Mt. Hawley primary policy's Products Liability exclusion, it has no duty to defend or indemnify Veristic in connection with the underlying Saucedo action or the underlying accident alleged therein.

## SEVENTH CAUSE OF ACTION

126.    Mt. Hawley refers to and incorporates paragraphs 1 through 125 above as if fully set forth.

127.    The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part:

### I.    INSURING AGREEMENT

#### A.    Coverage

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**.  However, the insurance afforded by this policy shall apply:  (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada.   If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the **underlying insurance** in all respects.  This includes changes by endorsement.

128.    Because there is no coverage under the Mt. Hawley primary policy for the reasons alleged herein, there is also no coverage under the Mt. Hawley excess policy because there is no ultimate net loss resulting from an occurrence insured by the underlying insurance.

129.    Mt. Hawley is entitled to judgment declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein because there is no ultimate net loss resulting from an occurrence insured by the underlying insurance.

**EIGHTH CAUSE OF ACTION**

130.    Mt. Hawley refers to and incorporates paragraphs 1 through 129 above as if fully set forth.

131.    The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part:

    **I.**    **INSURING AGREEMENT**

        **A.**    **Coverage**

> Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**.  However, the insurance afforded by this policy shall apply:  (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada.   If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

> This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the **underlying insurance** in all respects.  This includes changes by endorsement.

132.    Because there is no coverage under the Mt. Hawley primary policy for the reasons alleged herein, there is also no coverage under the Mt. Hawley excess policy because the underlying insurance has not been exhausted by payment of the limits of liability of such insurance.

133.    Mt. Hawley is entitled to judgment declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein because the underlying insurance has not been exhausted by payment of the limits of liability of such insurance.

### NINTH CAUSE OF ACTION

134.    Mt. Hawley refers to and incorporates paragraphs 1 through 133 above as if fully set forth.

135.    The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part:

I.    **INSURING AGREEMENT**

A.    **Coverage**

Subject to the other provisions of this policy, we will pay on behalf of the insured the insured's **ultimate net loss** if such loss results from an occurrence insured by **underlying insurance**.  However, the insurance afforded by this policy shall apply:  (a) only in excess of the **underlying insurance**; (b) only after the **underlying insurance** has been exhausted by payment of the limits of liability of such insurance; and (c) only if caused by an occurrence which takes place during the policy period and anywhere in the world; provided however, if suit is brought, such suit is brought in the United States, its territories or possessions, or Canada.   If the **underlying insurance** does not pay a loss, for reasons other than exhaustion of an aggregate limit of liability, then we shall not pay such loss.

This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations

of and shall follow the **underlying insurance** in all
respects.  This includes changes by endorsement.

136.   Because there is no coverage under the Mt. Hawley primary policy for the reasons alleged herein, there is also no coverage under the Mt. Hawley excess policy, which does not apply if the underlying insurance does not pay a loss for reasons other than exhaustion of an aggregate limit of liability.

137.   Mt. Hawley is entitled to judgment declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein because the policy does not apply if the underlying insurance does not pay a loss for reasons other than exhaustion of an aggregate limit of liability.

**TENTH CAUSE OF ACTION**

138.   Mt. Hawley refers to and incorporates paragraphs 1 through 137 above as if fully set forth.

139.   The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part:  "This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the **underlying insurance** in all respects.  This includes changes by endorsement."

140.   Because there is no coverage under the Mt. Hawley primary policy pursuant to the Known Circumstances exclusion, there is no coverage under the Mt. Hawley excess policy, which is subject to the Known Circumstances exclusion.

141.   Mt. Hawley is entitled to judgment declaring that, pursuant to the Known Circumstances exclusion, it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein.

**ELEVENTH CAUSE OF ACTION**

142.    Mt. Hawley refers to and incorporates paragraphs 1 through 141 above as if fully set forth.

143.    The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part: "This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the **underlying insurance** in all respects.  This includes changes by endorsement."

144.    Because there is no coverage under the Mt. Hawley primary policy pursuant to the Prior Claims exclusion, there is no coverage under the Mt. Hawley excess policy, which is subject to the Prior Claims exclusion.

145.    Mt. Hawley is entitled to judgment declaring that, pursuant to the Prior Claims exclusion, it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying Saucedo action or the underlying accident alleged therein.

**TWELFTH CAUSE OF ACTION**

146.    Mt. Hawley refers to and incorporates paragraphs 1 through 145 above as if fully set forth.

147.    The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part: "This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the **underlying insurance** in all respects.  This includes changes by endorsement."

148.    Because there is no coverage under the Mt. Hawley primary policy pursuant to the Products Liability exclusion, there is no coverage under the Mt. Hawley excess policy, which is subject to the Products Liability exclusion.

149.    Mt. Hawley is entitled to judgment declaring that, pursuant to the Products Liability exclusion, it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying Saucedo action or the underlying accident alleged therein.

### THIRTEENTH CAUSE OF ACTION

150.    Mt. Hawley refers to and incorporates paragraphs 1 through 149 above as if fully set forth.

151.    The amended petition in Saucedo seeks punitive damages against the underlying defendants, including Veristic.

152.    The Mt. Hawley excess policy (MXL 131 (05/15)) states, in part: "This policy, except where provisions to the contrary appear herein, is subject to all of the conditions, agreements, exclusions, definitions and limitations of and shall follow the **underlying insurance** in all respects.  This includes changes by endorsement."

153.    Punitive damages are outside the scope of "damages" as defined in the Mt. Hawley primary policy.

154.    Because punitive damages are outside the scope of coverage of the Mt. Hawley primary policy's definition of "damages," there is no coverage for punitive damages under the Mt. Hawley excess policy, which is subject to the definition of "damages" in the Mt. Hawley primary policy.

155.    The Mt. Hawley primary policy excludes coverage for punitive damages pursuant to the policy's Fines, Penalties And Assessments exclusion.

156.    Because there is no coverage for punitive damages under the Mt. Hawley primary policy pursuant to the Fines, Penalties And Assessments exclusion, there is no coverage for

punitive damages under the Mt. Hawley excess policy, which is subject to the Fines, Penalties And Assessments exclusion.

157.   Mt. Hawley has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with any claims for punitive damages asserted in <u>Saucedo</u> because liability coverage for punitive damages is barred by New York public policy.

158.   Mt. Hawley is entitled to judgment declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with any claims for punitive damages asserted in <u>Saucedo</u>.

**FOURTEENTH CAUSE OF ACTION**

159.   Mt. Hawley refers to and incorporates paragraphs 1 through 158 above as if fully set forth.

160.   The amended petition in <u>Saucedo</u> alleges bodily injury that existed prior to the inception date of the Mt. Hawley excess policy.

161.   To the extent the amended petition in <u>Saucedo</u> seeks damages resulting from professional services within the scope of the Mt. Hawley's excess policy, coverage is excluded pursuant to the policy's Continuous or Progressive Injury and Damage Exclusion.

162.   Mt. Hawley is entitled to judgment declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein.

**WHEREFORE**, Mt. Hawley is entitled to and demands judgment:  (1) declaring that it has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein for any relief outside the scope of the policy's definition of "damages;" (2) declaring that it has no duty to defend or

indemnify Veristic under the Mt. Hawley primary policy in connection with the underlying Saucedo action or the underlying accident alleged therein for any actual or alleged act, error, or omission that was not in the performance of "professional services" as defined in the Mt. Hawley primary policy; (3) declaring that, pursuant to the Mt. Hawley primary policy's Known Circumstances exclusion, it has no duty to defend or indemnify Veristic in connection with the underlying Saucedo action or the underlying accident alleged therein; (4) declaring that it has no duty to defend or indemnify Veristic under the Mt. Hawley primary policy in connection with any claims for punitive damages asserted in Saucedo; (5) declaring that, pursuant to the Mt. Hawley primary policy's Prior Claims exclusion, it has no duty to defend or indemnify Veristic in connection with the underlying Saucedo action or the underlying accident alleged therein; (6) declaring that, pursuant to the Mt. Hawley primary policy's Products Liability exclusion, it has no duty to defend or indemnify Veristic in connection with the underlying Saucedo action or the underlying accident alleged therein; (7) declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying Saucedo action or the underlying accident alleged therein because there is no ultimate net loss resulting from an occurrence insured by the underlying insurance; (8) declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying Saucedo action or the underlying accident alleged therein because the underlying insurance has not been exhausted by payment of the limits of liability of such insurance; (9) declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying Saucedo action or the underlying accident alleged therein because the policy does not apply if the underlying insurance does not pay a loss for reasons other than exhaustion of an aggregate limit of liability; (10) declaring that, pursuant to the Known Circumstances exclusion, it has no duty to indemnify Veristic under the Mt. Hawley

excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein; (11) declaring that, pursuant to the Prior Claims exclusion, it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein; (12) declaring that, pursuant to the Products Liability exclusion, it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein; (13) declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with any claims for punitive damages asserted in <u>Saucedo</u>; (14) declaring that it has no duty to indemnify Veristic under the Mt. Hawley excess policy in connection with the underlying <u>Saucedo</u> action or the underlying accident alleged therein; and (15) granting such other and further relief as the Court deems just and appropriate.

Dated:  April 27, 2020                    Respectfully submitted,

                                          DELAHUNT LAW PLLC


                                          By:    _____s/_____
                                                 Timothy E. Delahunt
                                                 Bar Roll. No. TD-2791
                                                 tdelahunt@delahuntpllc.com

                                          295 Main Street
                                          Suite 836
                                          Buffalo, New York 14203
                                          Tel.: (716) 878-9178

                                          *Attorneys for plaintiff Mt. Hawley Insurance Company*